J-S56008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: J.C.-M., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.C., FATHER | : | No. 745 MDA 2018 |

Appeal from the Decree April 4, 2018
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  26-AD-2018,
CP-22-DP-0000168-2015

| | | |
|---|---|---|
| IN THE MATTER OF: J.C.-M., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.C., FATHER | : | No. 748 MDA 2018 |

Appeal from the Decree Entered April 4, 2018
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  27 AD 2018,
CP-22-DP-0000169-2015

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 11, 2018**

Appellant, H.C. ("Father"), appeals from the decrees entered in the Dauphin County Court of Common Pleas Orphans' Court, which granted the petitions of the Dauphin County Social Services for Children and Youth ("Agency") for involuntary termination of the parental rights of A.M. ("Mother") and Father to their minor twin children, J.C.-M. and J.C.-M. ("Children"), and changed Children's reunification goal to adoption.  We affirm.

In its opinion, the Orphans' Court sets forth most of the relevant facts

and procedural history of this case. Therefore, we have no need to restate them. Procedurally, we add Agency filed petitions on March 9, 2018, for involuntary termination of Mother's and Father's parental rights to Children and to change Children's reunification goal to adoption. On April 3, 2018, the court conducted a termination hearing, during which it heard testimony from, *inter alia*, caseworker Jessica Jones, caseworker supervisor Heather Gutshall, and Father.[1] The court terminated Mother's and Father's parental rights to Children and changed Children's reunification goal to adoption on April 4, 2018.[2] On May 1, 2018, Father filed separate as to each child timely notices of appeal and contemporaneous concise statements of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i).[3] This Court consolidated Father's appeals *sua sponte* on June 5, 2018.

---

[1] During the proceedings, the attorney-GAL represented Children's interests in supporting termination of parental rights. Because Children have been in foster care since just after birth and were less than three years old at the time of the termination proceedings, we can presume, absent any evidence in the record to the contrary, that there was no conflict between Children's best interests and their legal interests. **See In Re: T.S.**, ___ A.3d ___, 2018 WL 4001825 (filed August 22, 2018) (holding appointment of second counsel is not required to represent legal interests of children, where children's legal interests and best interests do not diverge; due to their young age (less than three years old), presumption exists that children were too young to express subjective preferred outcome of termination proceedings; therefore attorney-GAL could fulfill statutory mandate for appointment of counsel and represent both best interests and legal interests of children).

[2] Mother did not file notices of appeal and is not a party to these appeals.

[3] Father's Rule 1925 statements were initially not scanned with the notices of appeal; the trial court has since corrected that error.

Father raises two issues for our review:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN TERMINATING THE PARENTAL RIGHTS OF [FATHER] AS TO [CHILDREN]?
>
> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT THE BEST INTERESTS OF [CHILDREN] WOULD BE SERVED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER]?

(Father's Brief at 6).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> > Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
> >
> > *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
> >
> > Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of

grounds for doing so.

> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted).  The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.  *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002).  We may uphold a termination decision if any proper basis exists for the result reached.  *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*).  If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.  *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

After a thorough review of the record, the brief of the parties, the applicable law, and the well-reasoned opinion of the Honorable John F. Cherry, we conclude Father's issues merit no relief.  The Orphans' Court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Orphans' Court Opinion, filed June 19, 2018, at 1-10) (finding: when Agency filed termination petition, Children had been in foster care for thirty-two months, since birth; evidence Agency presented at termination hearing established Father has been incarcerated during Children's entire lives, with exception of two to three months; Father presented no evidence he availed himself of parenting resources while incarcerated, and although aware of Children's placement, Father failed to avoid criminal activity; Father has failed

to satisfy care plan objectives, maintain contact with Agency, consistently participate in proceedings, and provide releases and authorizations for Children; further, Father acknowledged he has not provided Children parental care since their birth; caseworker Ms. Jones testified Father must secure and maintain stable housing to parent Children properly, which could take months or years and prolong Children's opportunity for permanency; Father failed to present evidence of his plans for residence and employment upon his release from incarceration; additional months of uncertainty would be detrimental to Children; Children have known only foster parents as their parents and have bonded well with foster parents, who also adopted Children's older sibling; evidence does not indicate Children have any bond with Father that, if broken, would cause Children harm; Children would suffer, however, if they were removed from foster parents' home; Father also presented no evidence to support his claim that Agency failed to consider family members as care or adoption resources; record is devoid of evidence of identity of family resources). The record supports the court's decision. Accordingly, we affirm on the basis of the Orphans' Court opinion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2018

- 5 -

IN RE:                          : IN THE CPURT OF COMMON PLEAS
                                : DAUPHIN COUNTY. PENNSYLVANIA
J.C.-M.                         :
                                : NO. 26 AD 2018/168 DP 2015
                                :
                                :
IN RE:                          :
                                :
J.C.-M.                         : NO. 27 AD 2018/169 DP 2015 ✓


## TRIAL COURT OPINION

This appeal follows the Decree of April 4, 2018, which terminated the parental rights of

H.C., ("Father") and ordered a goal change to adoption of J.C.-M. and J.C.-M.,

("Children") [1]

At the conclusion of the hearing on April 3, 2018, we set forth our findings and conclusions.

(Transcript of Proceedings, Termination of Parental Rights, April 3, 2018, pp. 33-

38)(hereinafter, "N.T."). We amplify those findings and conclusions with this Opinion.


## A. FACTUAL AND PROCEDURAL BACKGROUND

The Dauphin County Social Services for Children and Youth ("Agency") began contact with

Mother in 1999 related to housing, drug and alcohol, and mental health concerns. (N.T. p. 10).

Mother had nine children. None remain in her care. *Id.*

Jessica Jones served as an Agency caseworker for this family from June 2015 through

October 2017. While the Agency worked with Mother regarding another child, J.C.-M. and

J.C.-M. were born positive for cocaine. (N.T. p. 11). On July 6, 2015, the Agency filed

Dependency Petitions regarding J.C.-M. and J.C.-M. and took emergency custody. On July 9,

2015, a Shelter Care hearing occurred and Children were placed in the temporary care and

---

[1] A.M. ("Mother") does not appeal the Decree issued on the same date which terminated her parental rights.

1

custody of the Agency. Following an Adjudication and Disposition hearing on July 22, 2015, the Court deemed the Children dependent.

Father resided in a half-way house at the time of Children's birth in July 2015. (N.T. p. 30). The service objectives and Father's achievement of those are as follows:

1. Cooperate and comply with the Agency.

   Father failed to maintain contact with the Agency. Father was released from incarceration in July 2016 but received new charges which resulted in re-incarceration. (N.T. p. 16; N.T. p. 31). During the period following his release, Father left a voicemail which included inaccurate contact information. (N.T. p. 17). Father did not present himself to the Agency. *Id.*

2. Attend meetings and hearings and sign releases.

   Father attended only one out of ten court hearings in person and participated in one hearing by phone while incarcerated. (N.T. p. 13).

3. Sign releases.

   Father failed to consistently provide releases and authorizations. (N.T. p. 14; N.T. p. 31). Father refused to sign an authorization related to a change in the level of J.C.-M.'s occupational therapy services, which necessitated the issuance of a Court Order directing him to do so. (N.T. p. 19).

4. Notify the Agency within 24 hours of new residence or contact information.

   See, paragraph 1, *supra.*

5. Participate in all services provided or suggested by the Agency.

   Father failed to comply with this objective due to his incarceration and lack of contact with the Agency.

2

6. Obtain and maintain safe and stable housing.

Father has never presented a plan for stable housing. (N.T. p. 20).

7. Obtain and maintain a legal source of income in order to meet the Children's needs.

Father presented no evidence of income.

8. Refrain from all criminal activity/comply with the expectations of Probation/Parole

On August 11, 2016, Father was charged with felony Aggravated Assault (18 Pa.C.S. §2702). On August 29, 2016, Father was charged with two felony counts of Criminal Trespass- Break into Structure (18 Pa. C.S. §3503), one felony count of Flight to Avoid Apprehension (18 Pa.C.S. §5126) and one felony count of Escape (18 Pa.C.S. § 5121).

9. Comply with all expectations of prison while at Dauphin County Prison.

Father presented no evidence of compliance with this objective.

10. Obtain a drug and alcohol evaluation and follow all recommendations.

Father presented no evidence of compliance with this objective.

11. Provide urine screens

Father failed to provide urine screens. (N.T. p. 17).

On March 28, 2017, following a Permanency Review and Aggravated Circumstances hearing, the Dependency Court found that the Children remained dependent and that aggravated circumstances existed based upon Father's lack of continuing contact with the Children. Accordingly, the Agency was relieved of providing reasonable efforts toward reunification.

With the exception of two to three months, Father remained incarcerated during the Children's entire lives. (N.T. pp. 13-14). He has never performed parental duties for the Children. (N.T. p. 14). Father has written letters to the Children, although many letters ask only

3

about one child. (N.T. p. 17; N.T. p. 18). Father requested, but was denied, a visit with the Children at the Dauphin County Prison in that the prison conditioned the visit on no contact. (N.T. pp. 18-19). Father has made no request for progress or health reports regarding the Children. *Id.*

Agency caseworker Ms. Jones testified that in order for Father to properly parent the Children, it would be necessary for him to secure and maintain stable housing and employment, which could entail months or potentially years. (N.T. pp. 20-21). Allowing Father additional time to demonstrate such stability would place the Children's opportunity for permanency on hold for an extended period of time. (N.T. p. 22).

The Children, now three years old, have known only the foster parents as their parents. (*Id.*). They have bonded well with the foster parents, who have provided love, consistency and met all of their needs. (N.T. p. 23). The foster family adopted the Children's older sibling. (*Id.*)

Father acknowledged that at no time since their birth has he provided the Children parental care. (N.T. p. 32). Father testified that he anticipates release from incarceration on May 28, 2018. (N.T. p. 29).

## B. DISCUSSION

### The Court properly exercised its discretion in ordering the goal change from reunification to adoption.

The evidence establishes that a goal change to adoption and termination of parental rights meets the developmental, physical and emotional needs and welfare of the Children pursuant to 42 Pa.C.S. § 6351 and 23 Pa.C.S. § 2511 (b). Pursuant to § 6351 (f) of the Juvenile Act,

> ... when considering a petition for goal change for a dependent child, the juvenile Court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent

4

of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and whether the child has been in placement for at least fifteen of the last twenty-two months.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa.Super)(internal citation omitted).

In review of the trial court's goal change, our Superior Court has explained,

In cases involving a court's order changing the [court-ordered] goal...to adoption, [the Superior Court's] standard of review is abuse of discretion. To hold that the trial court abused its discretion, [the Superior Court] must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was a result of partiality, prejudice, bias or ill will. While [the Superior Court] is bound by the facts determine by the trial court, [it]is not tied to the court's inferences, deductions or conclusions; [the Superior Court has] a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate principles to that record. Therefore, [their] scope of review is broad.

*In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008)(citations omitted).

Here, at the time of the request for a goal change to adoption file March 9, 2018, the Children had been removed from the home by Court Order for thirty-two months. The evidence, as cited at length, *supra*, demonstrates Father's failure to comply with the family service plan. Accordingly, we properly exercised our discretion in ordering the goal change to adoption.

The Agency met its burden of proving that statutory grounds exist for and that the children's best interests require termination of Father's parental rights.

The standard of review governing the trial court's termination of parental rights is well settled. Namely,

When reviewing an appeal from a decree terminating parental rights, [the Superior Court] is limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa.Super.1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.*

5

> Where a trial court has granted a petition to involuntarily terminate parental rights, [the Superior Court] must accord the hearing judge's decision the same weight we would give to a jury verdict. *See In re Child M.*, 452 Pa. Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). *In re C. S.* 761 A.2d 1197, 1199 (Pa. Super. 2000).

The Agency, as the party seeking termination, bears the burden of establishing by clear and convincing evidence that grounds exist for termination of parental rights. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa. Super. 2002). The standard of clear and convincing evidence means "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203-1204 (Pa. 1989).

The Agency sought termination of Father's parental rights based upon the Adoption Act, 23 Pa.C.S. §2511(a)( 1 ), (2), (5) and (8) , which provide:

(1)   The parent by conduct continuing for a period of at least six months   immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)   The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5)   The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent

6

> cannot or will not remedy those conditions within a reasonable
> period of time, the services or assistance reasonably available
> to the parent are not likely to remedy the conditions which led
> to the removal or placement of the child within a reasonable
> period of time and termination of the parental rights would
> serve the needs and welfare of the child.

***

> (8) The child has been removed from the care of the parent by the court
> or under a voluntary agreement with an agency, 12 months or more
> have elapsed from the date of removal or placement, the conditions
> which led to the removal or placement of the child continue to exist
> and termination would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(1), (2), (5) and (8).

In considering whether the party seeking termination has satisfied these provisions, the Appellate Court keeps in mind that a parent has an affirmative duty to work towards the return of his or her children. *In re Adoption of J.J.,* 511 Pa. 590, 602, 515 A.2d 883, 889 (Pa. 1986). At a minimum, that "affirmative duty requires that the parent show a willingness to cooperate with CYS to obtain the rehabilitative services necessary to enable the parent to meet the duties and obligations inherent in parenthood." *Id.* In a termination proceeding, the trial court must consider all the circumstances in determining whether a parent has fulfilled his obligations; the court must further measure the parent's performance in light of what would be expected of any individual under similar circumstances. *Matter of M.L.W.,* 452 A.2d 1021, 1023-24 (Pa. Super. 1982). Further, the Appellate Court need only agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights. *In re J.E.* 745 A.2d 1250 (Pa. Super. 2000). See also, *In re J.I.R.,* 808 A.2d 934, 940 n.6 (Pa. Super. 2002). The Superior Court has explained:

7

> The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have her parental rights terminated. There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> ***
>
> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008).

We find that clear and convincing evidence, cited in detail, *supra*, establishes grounds for termination under 23 Pa.C.S. §2511 Section (a)(8). The Children have been in the care, custody and control of the Agency foster home for thirty-two months at the time of the filing of the Petition.

As to the relevance of Father's incarceration in applying the statutory provisions, we recognize that incarceration alone is not sufficient to support termination. *In re I.G.*, 939 A.2d 950 (2007). "Each case of an incarcerated parent facing termination must be analyzed on its own facts keeping in mind, with respect to subsection (a)(2), that the child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what she is supposed to be doing in prison." *In re E.A.P.* 944 A.2d 79, 84 (Pa. Super. 2008). Likewise, a parent's incarceration does not preclude termination of parental rights if the

8

incarcerated parent fails to utilize given resources and to take affirmative steps to support a parent-child relationship. *In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999). Father presented no evidence of parenting resources to which he availed himself during his incarceration.

Further, although aware of the Children's placement, Father failed to avoid criminal activity. "Where the parent does not exercise reasonable firmness in 'declining to yield to obstacles' his [parental] rights may be forfeited." *In re McCray's Adoption, 460 Pa. 210, 217, 331 A.2d 652, 655 (1975).*

## Best Interests Analysis

Having found that the Agency proved the statutory grounds for termination of parental rights under 23 Pa.C.S. §2511 Section (a)(1) and §2511 Section (a)(2), we undertake a separate "best interests" analysis. Pursuant to Section 2511(b), a court must give 'primary consideration to the [developmental, physical and emotional] needs and welfare of the child." *In re J. E.*, 745 A.2d 1250, 1254-55 (Pa. Super. 2000) *(citations omitted)*. The statute provides,

> Other considerations. - The court in terminating the rights of a parent shall give primary consideration to the developmental, physical, and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6), or (8), the court shall not consider any efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

In addition, while Section 2511(b) does not explicitly require a bonding analysis, analysis of the emotional bond, if any, between a parent and a child is a factor to be considered in determining the developmental, physical, and emotional needs and welfare of the child under §2511(b). *In the*

9

*Matter of K.K.R.-S., K.M.R., K.A.R.,* 958 A.2d 529, 533 (Pa. Super 2008). The Superior Court has explained:

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent child bond, paying close attention to the effect of permanently severing the bond.

*In re C.P.,* 901 A.2d 516, 520 (Pa. Super. 2006).

The record is devoid of evidence of a bond with Father which, if broken, would cause detriment to the children. Father has never lived with the Children. He would be a stranger to them. We find that the Children would suffer if removed from the stable, caring and loving pre-adoptive home to reside with a person they do not know.

We recognize that Father seeks additional time within which to prove that he can properly parent after release from incarceration. However, we note that Father provided no testimony as to plans for his residence and employment after release. We found compelling the testimony that the process of Father achieving and maintaining stability could encompass many months or a year. In deciding the issue of the best interests of a child, our appellate courts have noted that it is essential to allow a child "a chance to have his fundamental needs met without the constant insecurity that comes with knowing that someday, perhaps in the unreasonably distant future, he might again be wrenched away from his committed and capable caregiver." *In re N.C.,* 763 A.2d 913, 919 (Pa. Super. 2000). This Court has grave concerns about the impact upon the Children of additional months of uncertainty and of potential removal from the foster home to live with a father they do not know.

Finally, Father presented no evidence in support of his claim that the Agency failed to properly consider family members as care or adoption resources. The record is devoid of evidence of the identity of family resources.

10

For all of the foregoing reasons, the Decree of termination should be affirmed.

BY THE COURT:

JOHN F. CHERRY, JUDGE

June ___18___, 2018

Distribution:
Dauphin County Children and Youth, 1001 N. Sixth Street, Harrisburg, PA 17102
Heather Paterno, Esq., Guardian *Ad Litem*, P.O. Box 473, Hershey, PA 17033
Joseph Sembrot, Esq., 3631 N. Front Street, Harrisburg, PA 17110

11